Minsharr, J.
The original action was brought in the circuit court of Mahoning county against the defendants, in August, 1890, by the prosecuting attorney on the relation of a private person, Alexander F. C. WaddeJl, for the purpose, as appears from the prayer of the petition, of ousting The Pittsburgh, Youngstown & Ashtabula Railroad Company from the right, franchise and privilege “of using and occupying the private property of the relator” and his wife. The Pennsylvania Company being simply the lessee of the *249 road of that company. The company named acquired its right to the use of the land in question as a right of way, through a series of consolidations—the condemnation having been made in 1872, by The Youngstown & Canfield Railroad Company, incorporated under the laws of this state in that year. Subsequently this company and its road were merged in and became a part of The Lawrence Railroad Company, formed by proceedings in consolidation completed August 26, 1873, between it and another company; by like proceedings this company was merged in and became part -of The Youngstown, Lawrence & Pittsburgh Railroad Companj1- formed June 2, 1887; and then this company was merged in and became a part of the defendant, The Pittsburgh, Youngstown & Ashtabula Railroad Company formed by proceedings in consolidation, completed July 22, 1887.
The court finds in substance that the road from Haselton to Canfield never was constructed, nor was intended to be, by any of the companies; and that the object and intention of the original company and of The Lawrence Railroad Company, was to secure the right of way, locate and construct a private road to certain coal mines about four miles from Haselton, in which the stockholders of these companies were interested, and to which the road was constructed and operated in shipping coal from the mines for private purposes and none other, until in 1890, and sometime after all the coal had been removed from the same mines, when the track was torn up and abandoned back to the west line of the relator’s land, something over a mile from Haselton, from which point the remainder of the road is used as a switch to The American Tube & Iron Company and The ■Smith Brick Works.
The question now arises whether upon the facts as found by the court, the relator has a right to the relief prayed for. It may well be conceded, that the condemnation of private property for a private use, and its use for such purpose only, constitutes a flagrant abuse of the power of eminent domain, and that a company guilty of such abuse of its powers should be deprived of its corporate franchises and be dissolved. The State v. Railway Company, 40 Ohio St. *250 504. But our statutes limit the time in which this drastic remedy may be applied by the courts to an offending company, to five years from the commission of the offense. § 6789, Revised Statutes. Whether it was wise in the legislature to prescribe such a limitation, is not open to question here; nor can we say that the court erred in permitting the defendants to plead the statute after the parties had gone to trial; and it follows that the court was right in holding that, as a matter of law, no judgment ousting the company from its corporate rights and dissolving it, could be entered in the case. And, indeed, it should be observed that the present compan}'- committed none of these offenses. The property for the roadway was condemned by the original company in 1872, and the road was constructed over the way as condemned, by The Eawrence Railroad Company in 1873 and 1874. All the present company has done, has been to take up the track, bridges and so forth, and abandon the road to the west line of the relator, and continue the use of the remainder as a switch to certain private industries. So that there remains only the question whether any relief can, in this proceeding, be given the relator as against the present consolidated company. We say the relator, for it has been shown that none can be given the state, by reason of the statute of limitations, for any abuse of the power of eminent domain. The present company has, as a matter of fact, been guilty of no such abuse. It, so far as appears, has condemned no property for any purpose; and if it could be punished for what was done by some one or more of the companies now merged in it, certainly it could not be after the offense had been condoned by lapse of time in favor of the offending company. The only claim that can now be asserted against it is, that without any authority of law and against his consent, it is wrongfully occupying the property of the relator. Is it within the jurisdiction conferred on the courts in a proceeding in quo warranto 'to afford relief of any kind in such a case? We think not. Except where the proceeding is brought to try title to an office, in which the defendant may be ousted and the claimant inducted, or where it is brought to determine the title of a corporation *251 to property claimed by the state, it is always limited to a determination of the right of a corporation to the exercise of certain powers and franchises which can only be derived from the grant of the state. It is not a remedy to determine disputes between it and private persons as to the ownership of property. Where the power, of eminent domain has been conferred on a corporation by the state, it is not a matter to be determined in quo warranto, whether the corporation in the exercise of the power has perpetrated a fraud, and wrongfully or unjustly acquired the property of a private person, and if found guilty to oust it therefrom. Other and more appropriate civil remedies are provided the citizen for the assertion and protection of his rights of property in such cases. He may adopt any of the remedies he would have under like circumstances against a natural person. A corporation enjoys no immunity in this regard. It can no more wrongfully take and occupy the property of another, than can a natural person; and it is subject to the same remedies in such cases. If the facts found constitute an adandonment of the way through the relator’s land, he could certainly recover it in an action for the possession; or, if it was fraudulently acquired and used for a private purpose, I am unable to see why the owner, if without knowledge of the fraud at the time of the appropriation, might not, on discovering the fraud and returning or offering to return the money received as compensation and damages, cause the appropriation to be set aside, as any other judgment obtained by fraud, and have a writ of possession awarded.
To sum up, the object of a proceeding in quo warranto against a corporation, is to determine by what right it exercises a certain franchise—a franchise as here understood, being, as defined by Kent, a particular privilege conferred by the grant of the government and vested in individuals; or, as defined by Blackstone, a branch of the king’s prerogative subsisting in the hands of a subject. 3 Kent, 458; 2 Bla. Com. 37. Or it may be to oust it from the right to be a corporation for an abuse or non-user of franchises granted. Hence it is, that the state must always be the *252 plaintiff, as it alone can complain of such usurpation of its authority, or abuse of privileges granted. It is not then a suit for the vindication of the proprietary rights of the individual as against the claims of a corporation; the remedies of the individual against a corporation for the recovery of property being the same as against a natural person.

Judgment affirmed.